The next case on our call this morning is Agenda Number 12, Case Number 105-415, Christopher Holley v. Jorge Montes. Mr. Otto, are you ready to proceed? Yes, Your Honor. All right. And may it please the Court. My name is Michael Otto. I'm with the law firm of Jenner & Block. Gerald Salovey, Kevin McCall, and I, by order of this Court of September 14th, have been appointed to represent the petitioner, Christopher Holley. This is an original mandamus action in which Mr. Holley is challenging the Board's order placing him on electronic home detention as a condition of his mandatory supervised release. This action was unlawful for three reasons. First, it exceeded the Board's statutory authority. Second, it was unconstitutional because it kept Mr. Holley confined  Third, it was also unconstitutional because it rendered his sentence more onerous than the sentence he agreed to serve when he entered his negotiated plea contract with the state. There are also a couple of ancillary issues, mootness, and whether this is an appropriate case for mandamus. And I'd be happy to take any questions from Your Honors regarding either of those issues, but unless Your Honors have questions, I will stand on our briefs and on our response to the motion to dismiss on those issues. I'd like to start, if I may, with statutory authority. As this Court is well aware in biomedical labs v. trainer and numerous cases since then, Your Honors have clearly stated that an agency's authority is established by and limited to the authority that they're granted by the legislature in statute which creates the agency. In this case, that statute is Section 331 of the Code of Corrections, which is contained in the supplemental appendix to the blue brief, page SA1. Now, Section 331, specifically 331A5, does specify that the Board is the agency which sets the terms of mandatory supervised release, but it incorporates by reference Section 581 of the Code, and that's located on page SA24 of the blue brief. And Section 581 of the Code talks about when mandatory, excuse me, talks about mandatory supervised release. And the respondent points out correctly that generally it doesn't talk about terms and conditions. It only talks about the length of a term of MSR. But there's one exception. It does discuss one particular condition or term of MSR, and that's electronic home detention. On page SA24, all the way at the bottom, subsection D5 spells out the context in which it can be imposed. And that's a person who committed, I believe it's aggravated criminal sexual abuse or felony criminal sexual abuse, a second or successive occasion on a victim under the age of 18 years. That's when the legislature authorized it in Section 581D5. That's the only context in which it was authorized. And our position is this case could end right there. Biomedical labs v. trainer, the numerous cases since, say you look to the statute which creates the agency, in this case that's Section 331. Section 331 incorporates by reference Section 581. Section 581 only specifies one context in which it can be imposed, in which electronic home detention can be imposed. Further, even if your honors look beyond those statutes, there still is no statutory authority. The primary statute on which respondent relies is Section 314.2 of the Code of Corrections, which is located at page SA12 of the appendix to the blue brief. Section 314.2 does provide that one of the conditions that the Department of Corrections is responsible for monitoring is electronic home detention. But that's all it does. Section 314.2, Article 14 generally, and Section 314.2A specifically, discusses the responsibilities of the Department of Corrections. It is not a grant of authority to the Prisoner Review Board. If your honors look at Section 314.2A, clearly what it's doing is it's resolving a potential ambiguity. The legislature, as respondent points out, folks who are on MSR are in custody, correctly so. Well, there's a question then. These people are in the custody of the department, but the board is setting the terms and conditions. Well, who monitors, who supervises these people and makes sure that they're complying? In 314.2A, the legislature is simply providing that's the responsibility of the Department of Corrections, not the Prisoner Review Board. It is not a grant of authority to the board, not only because Section 314.2 and generally Article 14 of Chapter 3, it wouldn't make sense for the board to put a grant of authority, excuse me, it wouldn't make sense for the legislature to put a grant of authority to the board in that location. We know exactly where they would put it if they wanted to give the board authority, and that's in Section 337 of the code. And that's quite a long statute. It's contained on pages 6 through 8 of the appendix to the blue brief. Section 337, entitled Terms and Conditions of Parole or Mandatory Supervised Release, spells out the terms and conditions that must be applied, the subsections of, sub-subsections of Subsection A, the terms which may be applied, Subsection B, and the terms which may be applied to folks who are required to register as sex offenders at Subsection B-1. Now a respondent has an answer to that. He says, well, we have authority under Section 337. Just look at the first sentence of Section 337A. And that's on page SA6 of the brief, and I'm going to read it because it's an important one. It says that the terms and conditions, excuse me, the conditions of parole or mandatory supervised release shall be such as the prisoner review board deems necessary to assist the subject in leading a law-abiding life. And certainly we agree, we concede that the board has discretion as far as which conditions it will impose. But the board's discretion is limited to choosing among the conditions listed in Subsection B and, if applicable, Subsection B-1. Otherwise, if this first sentence of Section A meant, if it had the meaning the respondent ascribes to it, Subsections B and B-1 would have no relevance at all. They might as well not be in the statute. Mr. Otto, could you argue that there was an ambiguous element to this analysis and that if it is, it should favor your position? Well, as a fallback position, yes. But, Your Honor, we believe that the statutes are clear that there's no authority here. But, yes, if Your Honors find it ambiguous, certainly, as in the previous case, the rule of lenity should lead Your Honors to conclude, to rule in my client's favor. Yes. Subsections B and B-1 list permissible conditions of parole, and they spell out what conditions may be imposed. They need not be imposed in every case, but may be imposed. If Subsection A gave the Board unlimited authority to impose any condition it wanted on anybody it wanted, no matter what crime they were convicted of, there's no need for Subsections B and B-1. Subsection B-1 was added in 2005, whereas the first sentence of Subsection A has been on the books since the Unified Code of Corrections first came into existence in 1972. As the more recent and the more specific, Subsection B-1 and Subsection B, which has been amended, should be given precedence over that first sentence of Subsection A. Further, not only is there a lack of statutory authority, the legislature has made clear their intent that this condition not be imposed on every person who's put on MSR, and that's in Subsection A-15, which is contained on page SA-7 of the blue brief. And if Your Honors will forgive it, I'm going to read briefly from Subsection A-15. It provides, this is a, again, the subsections of, sub-subsections of Subsection A must be applied to every person. It's a term of every MSR. Subsection A-15 provides that the subject must, I'll quote, follow any specific instructions provided by the parole agent that are consistent with furthering conditions set and approved by the Prisoner Review Board, or by law, exclusive of placement on electronic detention. The legislature singled out electronic home detention as the one and only of the universe of possible conditions of MSR that could not generally be imposed. The legislature's intent could hardly be more clear that electronic home monitoring, electronic home detention, cannot generally be imposed because, they say, you have to tell everybody who goes on MSR, you have to do whatever your parole agent tells you, as long as it's consistent with what the board has set, except electronic home detention. This is different. The legislature has clearly specified that it's different. And the difference between this condition and the other possible conditions of MSR leads in to the second argument, which is that it was unconstitutional to impose this condition. Respondent's argument is that this is essentially just like any other term or condition. The board has to have discretion. We know that they can, we know that they can order that people on MSR be searched. Well, this is essentially like that. Well, no, it's not. There may have been some confusion. We're talking here about electronic home detention, not mere electronic tracking or monitoring. But electronic home detention, which is the condition that was placed on Mr. Holley, is, as the counsel for the state argued in the previous case, it was actual physical confinement. He was confined to his home 24 hours a day, seven days a week. If he wanted to leave, he had to get preapproval to leave. If he wanted to get a job, he had to get that job preapproved. If he wanted to go to school, he had to get preapproval to take a class. If he wanted to get medical attention, he had to get the board's approval to get medical attention. The board had complete and utter dominion over his physical liberty. And that makes this confinement. Not only does the operation make clear that this is confinement and how it actually works, but the legislature defines electronic home detention as confinement. In the electronic home detention law, Section 2C of the electronic home detention law defines home detention, and it defines it as confinement. That's the word the legislature used. The meaning can't be more clear. This is confinement. And if it had to be more clear, it is more clear, because the legislature has also specified that any violation of any term or condition of electronic home detention is prosecutable as escape. Under both the electronic home detention law and under the criminal code, violating any rule makes you a Class 3 felon. It's not only revocation of parole. It's also a potential additional five-year term of imprisonment. Mr. Otto, is this argument in any way impacted? Within the last few days the court had a motion that indicated that that rule or requirement had been lifted from this individual. Yes, ma'am. And so does that have any impact on the argument on the unconstitutionality of this particular rule when it has been taken away? I don't believe so, and I'll explain why. That decision, apparently by the Prison Review Board, according to the materials submitted by respondent in the motion to dismiss, did take Mr. Holley off of electronic home detention for now. There's no indication that he might not be put back on it tomorrow. There's no indication that other people in Mr. Holley's position might not be put back on it immediately. In fact, the decision with no warning to take Mr. Holley off merely highlights the degree of the board's authority. At their, I don't necessarily want to use the word whim, but at their discretion, whenever they want, they can take him off. They can put him back on. They can let him go to work. They can disallow him getting medical treatment. The board has complete and utter control. And is this a written part of his MSR, the home detention? Yes. Yes, and I believe that portion, that written order, is part of the materials in the appendix to our initial brief. Mr. Otto, why wouldn't a legitimate reading of 581 be not that MSR is only for specified sex offenses, but rather is mandatory for those offenses in discretionary with respect to other offenses? You're right, Your Honor, in that it is, subsection D5 does make it mandatory for the offenses to which it speaks. However, our position is, you know, because subsection, excuse me, because section 581 is directly incorporated in section 331, that's got to mean something. And the fact is the legislature in section 581 took the time to speak only to a single potential term of MSR, and that's electronic home detention. It's true that it's mandatory in section 581, but we don't feel that that means, certainly that doesn't indicate that there's discretionary authority. At best, it's ambiguous. But the fact is they do speak to this one term and they do authorize it only in that one context. Although Your Honor is correct, it is mandatory in that context. Returning to the question of constitutionality, as we pointed out, it is escape. A violation of any term is escape. It is defined as confinement.  Relatively recent decisions from the appellate court have held that electronic home detention is different. Electronic home detention is confinement for purposes of the question whether the person in Moss was charged with possession of a controlled substance within a penal institution. And the court found, well, he's on electronic home detention. That puts him within a penal institution. He's confined. Similarly, Moncrief, the question was, does his sentence have to run consecutive to the sentence for which he was on MSR, for which he was on electronic home detention? That boiled down to the question, well, is he on parole or is he incarcerated? Is he in confinement? And the court said, well, there's a difference. The person who's on parole, they have their physical liberty. A person who is on electronic home detention does not. Thus, the sentences do have to run consecutive. The third argument we have is based on this court's, now I can actually use the term recent, decision in People v. Whitfield just from December 2005. Your Honors, looked at a plea agreement and broke down what a plea agreement is. We said it's a contract and it's governed by contract law. And it is unlawful and it's unconstitutional to impose any term on a person who pleads guilty that they were not apprised of at the time of their plea agreement. Respondent relies on People v. Williams, which clarified the distinction between direct and collateral consequences of a plea. But Williams is distinguishable. In Williams, the question was, can the court introduce a plea of guilty as evidence in a prosecution, in a subsequent prosecution five years down the road? In that case, the person pled guilty to attempted murder. Five years later, the victim died. And the question is, well, can you introduce the guilty plea as evidence in that subsequent prosecution? And this court said, yes, because that's a collateral consequence. We don't require our trial judges to have a crystal ball and apprise a defendant of every possible conceivable far-fetched use that might be made in their guilty plea. We're not taking issue with that proposition of law. But the fact is, Your Honors distinguished a collateral consequence, such as that use of the guilty plea, from a direct consequence. And with respect to direct consequences, Your Honors said, you do have to be apprised of that. And a direct consequence of a guilty plea, if I may quote briefly, the direct consequences of a guilty plea are limited to the penal consequences of that plea, i.e., the consequences that relate to the sentence imposed on the basis of the plea. As Your Honors are well aware, mandatory supervised release is a part of every sentence. This is a term of mandatory supervised release. I expect that respondent will get up and say, well, that's true, but there was no guarantee that at the time he pled guilty, at the time he pled guilty there was no guarantee Mr. Holley would be placed on electronic home detention. Well, that's true. In fact, we argue that not only was it not mandatory, it was not authorized at all. But the fact remains, this fundamentally changed the sentence that he was required to serve. Even if Your Honors want to stop short of saying that it's full-on, full-blown custodial imprisonment, which we argue that it is, still it can hardly be disputed that it rendered his sentence more onerous to have a two-year term of house arrest instead of his freedom. At the time that he had already served, with credit for good time, the entire sentence imposed on him by the court. Would that mean that the legislature would be precluded from giving the Prison Review Board such authorization? Would the legislature be precluded from authorizing a prison review? Right, or authorizing. In other words, if we grant this mandamus, there's nothing to prevent the legislature from amending the statute and giving him that authorization. Is that correct? It would depend on which ground Your Honor found in Mr. Holley's favor. If you found in Mr. Holley's favor on the plea agreement question, I think that would mandate a slight change in the admonitions given at guilty plea hearings. And the trial court might have to tell somebody, by the way, there's going to be a term of MSR. One of the conditions of MSR is you might be put on house arrest. Do you still want to plead guilty or do you want to go to trial? That's it. That 10 seconds that just took me to say it, that would be the change, if the legislature did go ahead and amend the statute. If Your Honor's held, on the other hand, that it was a question of MSR. Let me ask you this just. Yes, Your Honor. You must certainly believe in a plea guilty to a sex offense that admonition should be given now. I do believe it. I'm not as familiar with the statutory provisions specifically governing sex offenders, but I do believe it certainly should be given, yes. Sex offenders, there have been several decisions from this court and other courts indicating that they're different and it's legitimate to treat them differently. This case is separate. Mr. Holley was not convicted of a sex offense, and this case should not impact the legislatures or the courts of this state in their ability to impose electronic home detention on sex offenders. I assume your time has expired. I'm going to let you answer the remainder. I think you were saying it depended on what basis we would rule on. I think you were still answering Justice Garmon's question. If not, you can sit down, but I thought you were. I may have had one more sentence to respond. As far as the plea agreement, it would possibly necessitate a change in the admonitions given by the trial courts. If you ruled just on the statutory grounds, the legislature could change the statute and the constitutionality could be addressed down the road. If you ruled that there was statutory authority but that it was unconstitutional, that might change things. That might change how things operate in the state. But the question that that would come down to is, is this custodial confinement? Is this confinement our position is that it is? I thank you very much for your time. Thank you, Mr. Otto. Mr. Treble? Good morning, Your Honors, Counsel, and may it please the Court. I'm Assistant Attorney General Carl Treble, representing the Respondent, Chairman of the Prisoner Review Board. The mandamus petition in this case should be denied for several reasons. First, the case is moot. Second, the Prisoner Review Board has statutory authority to impose special conditions on MSR and can constitutionally apply electronic home monitoring as one of those conditions. And lastly, this case is not appropriate for mandamus relief. To my first point, on February 28, 2008, the Prisoner Review Board ordered the removal of electronic home monitoring as a special condition of Petitioner's mandatory supervised release. His requested remedy in this case is that he be allowed to be removed from electronic home monitoring. Thus, this Court's order would have no force as to whether or not electronic home monitoring is being imposed on Petitioner. Now, his response is that there's nothing saying that the Prisoner Review Board can't go ahead and put him back on electronic home monitoring. The statutes make it pretty clear that the Prisoner Review Board has the power to expand or modify a Prisoner's mandatory supervised release conditions, but can only do so after a hearing. So I think in this case, it's a question of burdens, where there's no facts being presented either way. The Respondent has the burden of showing that this case is moot and has done so. The Petitioner then should have the burden of showing that one of the mootness exceptions applies. Here, where there's no facts to indicate whether or not the mandatory supervised release condition will be reimposed, it's a question of burdens, and since it's his burden to prove that it will be reimposed and there's no facts to support that, then the Court should rule that the mootness exception does not apply. As to the public interest exception question, there is no need for an authoritative decision at this point in time. Two lower court opinions have come out in the last year and a half dealing with similar issues and have come up with the same conclusions, particularly as to the ex post facto question, and as a related matter, preliminary to that decision deciding that there is statutory authority to impose electronic home monitoring as a mandatory supervised release condition. So since there's no need for an authoritative decision at this time, and since there's no evidence on the record that it's likely to reoccur as to Petitioner, there's no need to apply a mootness exception in this case. But as to the merits, there is clear statutory authority for the Board to impose electronic home monitoring or any condition it sees fit, and that authority is found in 3-3-1. 3-3-1 says that the Board is the authority for setting conditions for parole and mandatory supervised release. 3-3-7a says, quote, the conditions of parole or mandatory supervised release shall be such as the Board deems necessary to assist the subject in a law-abiding life. Then the section goes on to state what conditions will apply to every mandatory supervised release condition. But that doesn't mean that the Board is limited to those specific stated conditions. This is supported by the statutory language found in 3-3-7b, which states that the Board may, in addition to other conditions, require that the subject, and then it goes on to state more conditions, and again is supported by statutory authority in the Administrative Code. At Section 1610.80 of the Administrative Code, it states that persons released under mandatory supervised release are subject to rules of conduct prescribed by the Board and any special conditions deemed appropriate by the Board in individual cases. So the Administrative Code is giving the Board authority to set special conditions in individual cases. They can't apply electronic home monitoring as a condition in every case, just giving the Department of Corrections blanket authority to always impose electronic home monitoring in every case. But they can impose electronic home monitoring or other special conditions where they deem appropriate in individual cases. Now, Tishner relies specifically on 3-3-7a15 in order to counter this argument and states that here the legislature has singled out electronic home monitoring as an exception to the general rule. That's not particularly accurate, though. If you look at that statute, which is on Supplemental Appendix page 6, and on page 7 is the exception, it states that the person who's on MSR has to follow any specific instructions provided by the parole agent, including conditions set and approved by the Prisoner Review Board exclusive of placement on electronic home detention. So what the legislature is talking about there is what the parole agent's authority is in order to impose his own special conditions on the MSR. And it's basically giving the parole agent blanket authority to set very specific conditions on the parole within the purview of those authorized by the PRB in that case, except that the parole agent himself is not entitled to impose electronic home monitoring without specific authority by the PRB. Well, Counsel, on that specific section that you just referred to, what is the exclusive of placement on electronic detention? What's the meaning of that clause? The meaning of that clause, Your Honor, is that it's limiting the parole agent's authority with reference to every MSR condition. So it has to be read in the context of the preliminary language leading up to A-15, which is found in Subsection A, which states that here are the conditions for every MSR. And then it's saying in every MSR case you have to follow a parole agent's authority except as to electronic home monitoring. So there's two limitations placed upon what the petitioner sees as a prohibition on electronic home monitoring. And those two limitations are that prohibition is only referring to in every MSR case and it's only referring to the parole agent's specific authority. And the people aren't arguing, or the respondent isn't arguing, that the parole agents can always impose electronic home monitoring whenever they see fit. Rather, the statutes make it clear, particularly in the Illinois Administrative Code, that that's the authority of the Prisoner Review Board and that they may impose electronic home monitoring or any other special condition that they see fit in individual cases. So their statutory authority to impose mandatory supervisory release is only limited by the Constitution, which leads into the next argument of Petitioner. And Petitioner's argument is that this is unconstitutional for two reasons. First, because it was an ex post facto violation, and also because this begins to look too much like physical confinement. Both are inaccurate. First, there is no ex post facto violation here, clearly, because the Electronic Home Detention Act was passed in 1991 and the crime took place in 1996. Thus, there was plenty of notice that electronic home monitoring might be applied in his specific crime. Moreover, other factors weigh against an ex post facto violation. Specifically, this is not punishment. Electronic home monitoring is not intended to punish the person that's being placed upon it in an MSR context. Rather, it's merely designed to make sure that the conditions of the MSR assist the subject in leading a law-abiding life by providing enhanced monitoring in specific individual circumstances where the board feels it's appropriate. As to his argument that this becomes too onerous, well, there's a couple of problems. First, facially, the standard is that this court views a statute as being constitutional wherever possible. And the statute allows for a great deal of discretionary leeway on the part of the board and the supervising authority in setting the specific MSR conditions. Thus, it's impossible to say that this is facially invalid, where the board can make the electronic home monitoring conditions incredibly lenient to the point where they appear to be basically being completely free. The board can go from anywhere from saying that you can go wherever you want to go, as long as we pre-approve it, and we'll go ahead and pre-approve you for everything, all the way up to no, you're confined to your home and just stay there. So because we don't know what the discretionary authority was specifically in this case, what their decisions were specifically in this case, it becomes impossible then to rule on whether or not the statute was unconstitutionally applied in this case. And that's because this is an original mandamus action, which brings me to my last point. The factual record is simply not well enough developed to give mandamus relief in this case, where the facts are not known as to what the specific conditions were as to Petitioner. Petitioner's counsel got up and argued that he was confined to his home 24-7, and then went on to acknowledge specific exceptions to that. But the problem is that's not in the record. All we have in the record is the Board's authoritative decision that he's going to be placed on electronic home monitoring. But that doesn't tell us what the specific conditions were that were imposed by the supervising authority. And again, it's important to note that those limitations are no longer being applied. The ankle bracelet was taken off last week, and thus it would be inappropriate for this Court to reach out in this case to decide the constitutionality of a statute that isn't even being applied to Petitioner anymore, which goes back to my first point, that this case is indeed moot. There's no need for the Court to render a decision at this time in this case. And similar issues may be arising very soon in a case that's a better vehicle for a decision that might have a better developed factual record. Thank you.  Thank you, Your Honor. I don't want to put words in your mouth, but do you have any? I was just going to go over my checklist here, but it looks like I got everything, Your Honor. So I'd just ask that you deny the petition. Thank you, Mr. Tripp. Mr. Rado, rebuttal? A few points of rebuttal, Your Honors. First, with respect to Respondent's last point, which is that the factual record is insufficiently developed, this is the first I've heard that argument. That is not an argument that was raised in the briefs. There's never been any contention that there were insufficient facts for this Court to decide this issue. Respondent's argument in the brief was you shouldn't, this is an inappropriate case for mandamus because Mr. Holley has another mandamus case pending, which there's no basis for. The case Respondent relies on, the 1952, I think it was, case People v. Exrell, Dolan v. Dusher, states that mandamus is a remedy for cases of public issues. It's not a case for cases involving solely private rights or issues of only local public interest,  but this, I mean, Respondent has admitted in the motion to dismiss his moot that this is a case involving public interest. Mandamus is appropriate. As far as the underlying point, which is that we really don't know how much Mr. Holley was actually confined. Well, the fact is, I'm not going to go outside the record and tell Your Honors what I know that would be inappropriate, but the fact is this term, electronic home detention, certainly gave the Board unfettered discretion to impose whatever level of confinement they chose. Respondent's hypothetical that perhaps he just walked around free doesn't change one iota the degree of control that the Board had over Mr. Holley, and I guess that's where I need to stop as far as what's appropriate. As far as mootness, Respondent has it respectfully exactly backwards as far as the burden. The burden, when you're talking about voluntary cessation of an illegal activity, the burden is on the person who's claiming that their own cessation of illegal activity moots the case. The burden is on them, and it is a, quote, heavy burden, unquote, to show that this isn't going to happen again, and that's in the cases that we cited in the brief. Excuse me, not the brief, the response to the motion to dismiss. Respondent pointed to the intro language to Section 337B, and this is on the statutory authority question. This is my last point. It is about Section 337. He says, Section 337B says, in addition to other conditions, the Board may impose da-da-da-da-da, a laundry list. I was going to do my best to avoid embarrassing myself by attempting to pronounce the Latin phrase, but I'm afraid I now have no other choice. It used to be generous. As your honors are well aware, there's a rule of construction, a rule of statutory construction that says, when you've got a list, when you've got a laundry list, and then you've got a more general, you know, as only including terms similar to the enumerated terms. If your honors look at the terms in Subsection B, they're all very similar. They all are terms that allow the person to get their life going on the right track. Get a job. Comply with orders of protection. Get medical help if you need it. Get psychiatric help if you need it. Get drug and alcohol counseling if you need it. Support your family. Live right. I believe it's on page SA7, your honor. This electronic detention is nothing like those other terms and conditions. This is locking someone in their home 24-7, or at least the authority to lock them in their home 24-7. And that brings me to an observation, which is that the respondent's point is that, you know, this was a term specifically tailored to Mr. Holley in light of the crimes for which he was convicted, you know, specifically tailored to him. That's an argument that it would be a little bit difficult to withstand analysis, because the fact is Mr. Holley was convicted of coming home from work and committing murder in his home. And so what does this condition require him to do? You can only go to work and come home, and then you have to sit in your home. How is that specifically tailored to Mr. Holley? It doesn't make any sense at all. It restricts him. Finally, subsection 815, 337A15. Respondent says, this is really just talking about the agent's authority, the parole agent's authority. But he ignores the clause that says that every person must be advised they must comply with every condition imposed by the parole agent that is consistent with the conditions or the terms set and approved by the Prisoner Review Board or by law. The Prisoner Review Board is a critical part of subsection 815. If what the parole agent is saying is inconsistent with what the Prisoner Review Board says, then you don't have to follow it anyway. This singles out electronic home detention as the one and only condition that you don't generally have to comply with. And with that, we request that Your Honors enter in order and issue an opinion clarifying that it is illegal and unconstitutional for the Prisoner Review Board to impose this condition on non-sex offenders. Mr. Otto, did you just say that you generally do not have to comply with it? I didn't quite hear that last. I hope I didn't. 815. I hope I didn't say it backwards. But yes, that's right. You generally, yes, electronic home detention is the one term or condition of MSR that is singled out that you do not have to follow your agent's instructions to get on that. And one of the points I wanted to go back to that ties in with the people's argument, on the mandamus claim, one of the elements, the essential element is there's a clear duty. Yes. In terms of this argument, this kind of ties back in part to what Justice Fitzgerald asked about. You said the ambiguity would be a fallback position, but in a mandamus case, can we award relief if there's an ambiguity that we have to resolve? Doesn't it, in the first instance, have to be a clear duty? That's a good point, Your Honor. And that's why we didn't argue it to be ambiguous. You're right. Mandamus does involve a clear duty in the public official to comply with a particular provision. And you're right. If it were ambiguous, that would make it more difficult. It might make it inappropriate to grant mandamus. That's why we say the statutes are, in fact, unambiguous as far as precluding and as far as having no authority to grant. So is your argument on the clear duty is that the Prison Review Board has absolutely no authority to do this? Has no authority to impose this on non-sex offenders, yes. And moreover, even if there were statutory authority, still, if it's unconstitutional, the Prison Review Board has a clear duty to comply with the Constitution. Thank you. Thank you very much, Your Honors. Thank you, Mr. Rado. Thank you, Mr. Trevel. Case number 105-415, Christopher Holley v. Jorge Montez, is taken under advisement as agenda number 12.